STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM
BUSINESS DOCKET

AYERS BASEMENT SYSTEMS, LLC,

      Plaintiff,

v                                          Case No. 18-_____-CK
                                           Hon. _____
STAY DRY BASEMENT WATERPROOFING
INC., DAVID KUZAVA and TALAL BADRA,

      Defendants.

_____/

Michael F. Matheson (P52997)
Matheson Law Firm
Attorneys for Plaintiff
200 Woodland Pass, Suite F
East Lansing, MI 48823
(517) 993-6699

_____/

## VERIFIED COMPLAINT

A civil action between Ayers Basement Systems, LLC and Stay Dry Basement Waterproofing Inc. was previously filed in *Ayers Basement Systems v Stay Dry Basement Waterproofing Inc., et al,* Ingham County Circuit Court, Case No. 12-953-CK, which was dismissed pursuant to the terms of a Settlement and Mutual Release Agreement between the parties. The breach of that Settlement Agreement by Stay Dry Basement Waterproofing Inc. forms the basis, in part, for the current lawsuit.

Plaintiff, Ayers Basement Systems, LLC ("Ayers Basement"), by and through its attorneys, Matheson Law Firm, states the following for its Verified Complaint against Defendants, Stay Dry Basement Waterproofing Inc. ("Stay Dry"), David Kuzava

("Kuzava") and Talal Badra ("Badra," and collectively with Stay Dry and Kuzava, "Defendants"):

## PARTIES, JURISDICTION AND VENUE

1.  This Complaint is verified, pursuant to MCR 3.310, by the supporting Affidavit of Virgil Ayers.

2.  Ayers Basement is a Michigan limited liability company located in Eaton County and doing business in Ingham County, Michigan.

3.  Stay Dry is a Michigan corporation located in and doing business in Ingham County.

4.  Kuzava is an individual residing in Barry County and regularly doing business in Ingham County.

5.  Badra is an individual residing in and regularly doing business in Ingham County.

6.  Venue is proper in this Court pursuant to MCL 600.1621 and MCL 600.1627. The wrongful actions alleged herein occurred in Ingham County, and Defendants regularly do business in Ingham County.

7.  Jurisdiction is proper in this Court because the amount in controversy exceeds $25,000.00 and Ayers Basement seeks equitable relief.

## GENERAL ALLEGATIONS

8.  Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

9.  Ayers Basement is in the highly competitive business of installing and servicing basement waterproofing systems and sump pumps, performing crawlspace and foundation repairs, and mold control.

10.  On November 22, 2013, Ayers and Stay Dry, as well as former employees of Ayers Basement, entered into a Settlement and Mutual Release Agreement ("Settlement

Agreement") in *Ayers Basement Systems v Stay Dry Basement Waterproofing Inc., et al* (Ingham County Circuit Court, Case No. 12-953-CK). See, Exhibit 1, Affidavit of Virgil Ayers, Tab A.

11.　　The Settlement Agreement related to litigation between Ayers Basement and Stay Dry regarding Stay Dry's interference with other non-compete agreements Ayers Basement had with its employees.

12.　　In relevant part, the Settlement Agreement states as follows:

> Neither Stay Dry nor Ayers shall employ, or solicit to employ, any current or former employee of Ayers or Stay Dry who is subject to a non-competition agreement with either Ayers or Stay Dry.

> *Id.*, Paragraph 1.a

13.　　On September 22, 2014, Badra signed a Confidentiality, Non-Solicitation, and Non-Compete Agreement ("Badra Non-Compete").

14.　　The Badra Non-Compete provided, among other matters, that Badra would refrain from becoming employed with a competitor of Ayers Basement during the three years following the termination of his employment from Ayers Basement. Exhibit 1, Affidavit of Virgil Ayers, Tab B, Badra Non-Compete.

15.　　On February 17, 2016, Kuzava signed a Confidentiality, Non-Solicitation, and Non-Compete Agreement ("Kuzava Non-Compete," and collectively with the Badra Non-Compete, the "Non-Compete Agreements").

16.　　The Kuzava Non-Compete provided, among other matters, that Kuzava would refrain from becoming employed with a competitor of Ayers Basement during the three years following the termination of his employment from Ayers Basement. Exhibit 1, Affidavit of Virgil Ayers, Tab C, Kuzava Non-Compete.

17.　　Badra and Kuzava were employed as System Design Specialists – Sales.

18.     During their employment with Ayers Basement, Badra and Kuzava received confidential information and access to the trade secrets of Ayers Basement.

19.     Badra severed his employment with Ayers Basement on March 3, 2017.

20.     Kuzava severed his employment with Ayers Basement on March 4, 2017.

21.     Upon information and belief, Badra and Kuzava are now both employed at Stay Dry and are violating their Non-Compete Agreements.

22.     Badra has also recently contacted a former employee of Ayers Basement for the purpose of soliciting that person for employment at Stay Dry, even though that person is governed by a non-compete agreement with Ayers Basement.

23.     In order to perform the duties involved with their employment, Badra and Kuzava also received extensive training in the proprietary and confidential processes, systems and techniques Ayers Basement uses in the course of its business. This training was conducted at significant time and expense to Ayers Basement.

24.     Badra and Kuzava were also granted access to Ayers Basement's confidential information, including trade secrets, customer lists, marketing procedures, office procedures, billing procedures, product plans, financial statements and other information regarding customer and potential customer relationships ("Confidential Information").

25.     The Confidential Information is not to be disclosed to others, pursuant to the Non-Compete Agreements.

26.     Stay Dry is a direct competitor of Ayers Basement, as it provides services and materials for the installation of basement waterproofing systems, and crawlspace and foundation repair in the same geographic area as Ayers Basement.

27.     As a result of Stay Dry's breach of the Settlement Agreement in hiring  Badra and Kuzava, as well as Badra and Kuzava's breaches of the Non-Compete Agreements, Ayers Basement has been harmed and will continue to be harmed.

28.     Furthermore, Ayers Basement's Confidential Information has been compromised by its disclosure to a direct competitor of Ayers Basement and is otherwise being used in direct competition against Ayers Basement, which is also a breach of the Non-Compete Agreements.

29.     Through the employment of Badra and Kuzava, Stay Dry is benefiting by obtaining Ayers Basement's Confidential Information, and the specialized training provided to the former employees of Ayers Basement.

## COUNT I — BREACH OF SETTLEMENT AGREEMENT
### (Defendant Stay Dry)

30.     Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

31.     The Settlement Agreement between Stay Dry and Ayers Basement is a valid and enforceable agreement.

32.     Stay Dry has breached the Settlement Agreement by hiring former employees of Ayers Basement who are subject to non-compete agreements with Ayers Basement.

33.     As a direct and proximate result of Stay Dry's breach of the Settlement Agreement, Ayers Basement has suffered damages that were reasonably foreseeable by Stay Dry, including loss of customers, substantial loss of business profits and harm to its goodwill.

34.     The Settlement Agreement further provides:

> This Agreement may be enforced separately from the Lawsuit. In the event of any litigation arising from or related to this Agreement the prevailing party shall be entitled to recover from the non-prevailing party all reasonable actual attorney fees incurred in the prosecution or defense of the matter. Whether a party is a "prevailing party" shall be determined in accordance with Michigan law.

> Exhibit 1, Affidavit of Virgil Ayers, Tab A, paragraph 5

5

WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Stay Dry by enjoining Stay Dry's violations of the Settlement Agreement and awarding Ayers Basement an amount in excess of $25,000.00, plus interest, costs, reasonable actual attorneys' fees and any other relief the Court deems equitable and just.

## COUNT II — BREACH OF NON-COMPETE AGREEMENT
### (Defendant Badra)

35.     Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

36.     The Badra Non-Compete is a valid and enforceable agreement.

37.     Badra has breached the Badra Non-Compete by undertaking employment with Stay Dry, soliciting former employees of Ayers Basement to breach their non-compete agreements with Ayers Basement, disclosing Confidential Information to Stay Dry and otherwise misusing the Confidential Information.

38.     In relevant part, the Badra Non-Compete states as follows:

> The Parties agree that monetary damages resulting from a breach of this Agreement by Employee are difficult, if not impossible, to calculate with any certainty. As a result, the parties agree that the amount of $75,000.00 represents a fair and reasonable estimation of monetary damages Ayers will suffer as a result of Employee's breach of this Agreement, and Employee agrees to pay Ayers that amount as liquidated damages, and not as a penalty, for Employee's breach of this Agreement. This liquidated damage provision is a good-faith attempt by the Parties to estimate the total damages incurred by Ayers as a result of Employee's breach of this Agreement.

> Exhibit 1, Affidavit of Virgil Ayers, Tab B, paragraph 5.b

39.     The Badra Non-Compete also states:

> In the event of any breach of this Agreement by Employee, Ayers shall be entitled to receive from Employee payment of, or

6

reimbursement for, its reasonable attorney's fees, costs, and expenses incurred in enforcing this Agreement, in addition to any other remedies available at law or in equity.

*Id.,* paragraph 5.c

40.     As a direct and proximate result of Badra's breaches of Badra Non-Compete Agreement, Ayers Basement has suffered damages that were reasonably foreseeable by Badra, including loss of customers, substantial loss of business profits and harm to its goodwill.

41.     During the course of his employment with Ayers Basement, Badra was also paid a salary and commissions on projects he sold.

42.     Badra was overpaid commissions during his employment with Ayers Basement and, despite repeated requests for reimbursement, Badra has failed to return the overpaid commissions.

WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Badra by enjoining Badra's violations of the Badra Non-Compete, returning the Confidential Information to Ayers Basement and awarding Ayers Basement an amount in excess of $25,000, plus interest, costs, reasonable actual attorneys' fees and any other relief the Court deems equitable and just.

## COUNT III — BREACH OF NON-COMPETE AGREEMENT
### (Defendant Kuzava)

43.     Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

44.     The Kuzava Non-Compete is a valid and enforceable agreement.

45.     Kuzava has breached the Kuzava Non-Compete by undertaking employment with Stay Dry, disclosing Confidential Information to Stay Dry and otherwise misusing the Confidential Information.

46.    In relevant part, the Kuzava Non-Compete states as follows:

The Parties agree that monetary damages resulting from a breach of this Agreement by Employee are difficult, if not impossible, to calculate with any certainty. As a result, the parties agree that the amount of $75,000.00 represents a fair and reasonable estimation of monetary damages Ayers will suffer as a result of Employee's breach of this Agreement, and Employee agrees to pay Ayers that amount as liquidated damages, and not as a penalty, for Employee's breach of this Agreement. This liquidated damage provision is a good-faith attempt by the Parties to estimate the total damages incurred by Ayers as a result of Employee's breach of this Agreement.

Exhibit 1, Affidavit of Virgil Ayers, Tab C, paragraph 5.b

47.    The Kuzava Non-Compete also states:

In the event of any breach of this Agreement by Employee, Ayers shall be entitled to receive from Employee payment of, or reimbursement for, its reasonable attorney's fees, costs, and expenses incurred in enforcing this Agreement, in addition to any other remedies available at law or in equity.

*Id.,* paragraph 5.c

48.    As a direct and proximate result of Kuzava's breaches of Kuzava Non-Compete Agreement, Ayers Basement has suffered damages that were reasonably foreseeable by Kuzava, including loss of customers, substantial loss of business profits and harm to its goodwill.

49.    WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Kuzava by enjoining Kuzava's violations of the Kuzava Non-Compete, returning the Confidential Information to Ayers Basement and awarding Ayers Basement an amount in excess of $25,000.00, plus interest, costs, reasonable actual attorneys' fees and any other relief the Court deems equitable and just.

## COUNT IV — TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS
### (Defendant Stay Dry)

50.     Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

51.     Ayers Basement has a contractual relationship with its former employees, including Badra and Kuzava, who agreed to abstain from competing with Ayers Basement and from misusing Confidential Information.

52.     Ayers Basement derives a future economic benefit from its contractual relationship with its former employees.

53.     Stay Dry was aware of the Non-Compete Agreements at the time Badra and Kuzava were hired by Stay Dry.

54.     Stay Dry intentionally and improperly induced Badra and Kuzava to breach their Non-Compete Agreements.

55.     As a result of Stay Dry's misconduct, Ayers Basement suffered damages including loss of customers, substantial loss of business profits and harm to its goodwill.

WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Stay Dry an amount in excess of $25,000.00, plus interest, costs, reasonable actual attorneys' fees and any other relief the Court deems equitable and just.

## COUNT V – MISAPPROPRIATION OF
## TRADE SECRETS AND CONFIDENTIAL INFORMATION

56.     Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

57.     During their employment with Ayers Basement, Badra and Kuzava had access to Confidential Information.

9

58.    The Confidential Information gave Ayers Basement an opportunity to obtain an advantage over competitors.

59.    The Confidential Information is not known to Ayers Basement's competitors or others outside Ayers Basement's own business.

60.    Ayers Basement took reasonable steps to safeguard its Confidential Information, which included entering into the  Non-Compete Agreements.

61.    Badra and Kuzava misappropriated Ayers Basement's Confidential Information by disclosing it to third parties without Ayers Basement's consent and using it for the benefit of a directly competing business.

62.    Stay Dry misappropriated the Confidential Information by obtaining it from Badra and Kuzava and using it for the benefit of its directly competing business.

63.    Defendants have misappropriated and will continue misappropriating Ayers Basement's Confidential Information to their benefit and to Ayers Basement's detriment through Badra's and Kuzava's continued employment with Stay Dry.

64.    As a result of Stay Dry's conduct, Ayers Basement suffered damages including loss of customers, substantial loss of business profits and harm to its goodwill.

WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Badra, Kuzava and Stay Dry by enjoining their misappropriation of Confidential Information and awarding Ayers Basement an amount in excess of $25,000.00, plus interest, costs, reasonable actual attorneys' fees, and any other relief the Court deems equitable and just.

### COUNT VI — CIVIL CONSPIRACY

65.    Ayers Basement re-alleges and incorporates by reference the allegations contained in all preceding and subsequent paragraphs as if fully set forth herein.

66.    Defendants wrongfully conspired with one another with the intent to illegally misappropriate Ayers Basement's Confidential Information.

67.   Defendants conspired to use Ayers Basement's Confidential Information for the benefit of Stay Dry, and contrary to the Badra and Kuzava Non-Compete Agreements.

68.   The Defendants' misconduct resulted in the misappropriation of Ayers Basement's Confidential Information.

69.   Because of Defendants' conspiracy and their tortious acts, Ayers Basement suffered damages including loss of customers, substantial loss of business profits, and harm to its goodwill.

70.   Defendants are jointly and severally liable to Ayers Basement for all of its injuries and damages.

WHEREFORE, Ayers Basement requests that this Court enter judgment in Ayers Basement's favor and against Badra, Kuzava and Stay Dry, in an amount in excess of $25,000.00, plus interest, costs, reasonable actual attorneys' fees and any other relief the Court deems equitable and just.

Respectfully submitted,

Dated:  August 3, 2018

Michael F. Matheson (P52997)
Matheson Law Firm
200 Woodland Pass, Suite F
East Lansing, MI 48823
(517) 993-6699
Attorneys for Ayers Basement Systems,
LLC

# Exhibit
# 1

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM
BUSINESS DOCKET

---

AYERS BASEMENT SYSTEMS, LLC,

     Plaintiff,

v

STAY DRY BASEMENT WATERPROOFING
INC., DAVID KUZAVA and TALAL BADRA,

     Defendants.

_____/

Case No. 18-_____-CK
Hon. _____

Michael F. Matheson (P52997)
Matheson Law Firm
Attorneys for Plaintiff
200 Woodland Pass, Suite F
East Lansing, MI 48823
(517) 993-6699
_____/

## AFFIDAVIT OF VIRGIL AYERS

Virgil Ayers, being first duly sworn, deposes and states as follows:

1.    I am a Member of Ayers Basement Systems, LLC ("Ayers Basement"). I am making this Affidavit based upon my own personal knowledge and I would be competent to testify to the facts and matters contained herein if I were called and sworn as a witness.

2.    Ayers Basement is engaged in the highly competitive business of basement, crawlspace and foundation waterproofing and repair; servicing of basement waterproofing systems; mold control; and sump pumps.

3.    The products and systems of Ayers Basement are unique and have advantages over our competitors doing the same or similar work.

4.      Ayers Basement keeps as confidential its customer lists, financial records, technical processes and trade secrets.

5.      Stay Dry Basement Waterproofing Inc. ("Stay Dry") is engaged in the same business as Ayers Basement.

6.      On November 22, 2013, Ayers Basement and Stay Dry, as well as former employees of Ayers Basement, entered into a Settlement and Mutual Release Agreement ("Settlement Agreement") in *Ayers Basement Systems v Stay Dry Basement Waterproofing Inc., et al* (Ingham County Circuit Court, Case No. 12-953-CK). See, Tab A.

7.      The Settlement Agreement related to litigation Ayers Basement was forced to bring against Stay Dry for its interference with other non-compete agreements Ayers Basement had with its employees.

8.      In relevant part, the Settlement Agreement states as follows:

> Neither Stay Dry nor Ayers shall employ, or solicit to employ, any current or former employee of Ayers or Stay Dry who is subject to a non-competition agreement with either Ayers or Stay Dry.

> Tab A, Paragraph 1.a

9.      On September 22, 2014, Ayers Basement entered into a Confidentiality, Non-Solicitation, and Non-Compete Agreement with Talal Badra ("Badra Non-Compete").

10.     The Badra Non-Compete provided, among other matters, that Badra would refrain from becoming employed with a competitor of Ayers Basement during the three years following the termination of his employment from Ayers Basement. Exhibit B, Badra Non-Compete.

11.     On February 17, 2016, Kuzava signed a Confidentiality, Non-Solicitation, and Non-Compete Agreement ("Kuzava Non-Compete").

2

12.     The Kuzava Non-Compete provided, among other matters, that Kuzava would refrain from becoming employed with a competitor of Ayers Basement during the three years following the termination of his employment from Ayers Basement. Exhibit C, Kuzava Non-Compete.

13.     Badra and Kuzava were employed with Ayers Basement in the capacity of Systems Design Specialists – Sales.

14.     During their employment with Ayers Basement, Badra and Kuzava received confidential information and access to the trade-secrets of Ayers Basement.

15.     Badra severed his employment with Ayers Basement on March 3, 2017.

16.     Kuzava severed his employment with Ayers Basement on March 4, 2017.

17.     It is my understanding that both Talal Badra and David Kuzava are employed at Stay Dry Basement Waterproofing Inc. ("Stay Dry") and are actively soliciting Ayers Basement's customers, employees and/or suppliers, in violation of the Settlement Agreement and Non-Compete Agreements.

18.     I have also been advised that Talal Badra recently solicited one of our former employees in an attempt to persuade that former employee to also violate the terms of his non-compete agreement.

19.     Badra and Kuzava are using the confidential information and trade secrets of Ayers Basement for their benefit and that of Stay Dry.

20.     The Defendants activities are and will continue to cause irreparable harm to Ayers Basement due to the loss of, among other matters, (a) customers, (b) trade-secrets, (c) customer goodwill and (d) business reputation.

21.     I have read and reviewed the contents of the Complaint and request for a Temporary Restraining Order and Motion to Show Cause and attest that the contents of the documents are true to the best of my knowledge, information and belief.

3

FURTHER, Affiant sayeth naught.

_____
Virgil Ayers, as Member of Ayers
Basement Systems, LLC

Subscribed and sworn to before me
this 3rd day of August, 2018.

_____
_____, Notary Public, State of Michigan
_____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires: 12/20/2023.

4

Tab
A

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT ("Agreement") dated November 22, 2013 is entered into between Ayers Basement Systems, LLC, ("Ayers") and Stay Dry Basement Waterproofing, Inc. ("Stay Dry") and James Whittum ("Whittum") and Shane Cunningham ("Cunningham") (collectively the "Parties").

### RECITALS

1.      On August 30, 2012, Ayers filed a Complaint against Stay Dry, Whittum, and Cunningham in the Circuit Court for Ingham County, Michigan, captioned as: *Ayers Basement Systems v Stay Dry Basement Waterproofing, Inc., et al,* Case No. 12-953-CK (the "Lawsuit").

2.      In the Lawsuit, among other matters, Ayers asserted claims against Stay Dry for tortuous interference with Ayers' Employee Non-Compete Agreements ("Non-Competes") with Whittum and Cunningham.  Ayers also made claims against Whittum and Cunningham for violation of their Non-Competes.

3.      A default was entered against Cunningham on February 26, 2013 for his failure to file an Answer or otherwise defend against the Lawsuit.

4.      The Parties, while denying liability to each other, desire to avoid the cost and inconvenience of further litigating the Lawsuit, and seek to resolve this matter by entering this Agreement.

### TERMS AND CONDITIONS

In consideration of the mutual agreements made herein, the Parties agree as follows:

1.      Terms.

    a. Neither Stay Dry nor Ayers shall employ, or solicit to employ, any current or former employee of Ayers or Stay Dry who is subject to a non-competition agreement with either Ayers or Stay Dry.  Stay Dry will further refrain from employing Whittum or Cunningham for the duration of their Non-Competes.

    b. Whittum and Cunningham acknowledge the validity of their Non-Compete, and agree not to seek employment or be employed with Stay Dry during the term of his Non-Compete.

    c. The Parties agree that a breach or threatened breach of paragraphs 1(a) and/or (b) shall allow the non-breaching party to pursue all available legal or equitable remedies, including, but not limited to,

1

requesting a temporary restraining order and permanent injunctive relief.

d. Ayers shall dismiss the Lawsuit against Stay Dry, Whittum and Cunningham, with prejudice, and without costs to any party, in the form attached as Exhibit A.

2. <u>Release</u>. The Parties hereby expressly release and forever discharge each other and their successors, predecessors and assigns, from all claims and/or causes of action arising out of the Lawsuit, which each may have against the other, known or unknown, contingent or accrued. This Agreement is a compromise of disputed claims between the Parties and is made in good faith to settle the dispute and avoid all future disputes between the Parties arising from the facts giving rise to the Lawsuit. The Parties each agree not to commence, cause or permit to commence against the other Party to this Agreement any action or other proceeding based upon any claims here released.

3. <u>No Admissions</u>. It is hereby agreed and understood by the Parties that none of them admit any liability or wrongdoing, and that the consideration of this release is given to resolve the disputed claims.

4. <u>Enforcement</u>. This Agreement may be enforced separately from the Lawsuit. In the event of any litigation arising from or related to this Agreement the prevailing party shall be entitled to recover from the non-prevailing party all reasonable actual attorney fees incurred in the prosecution or defense of the matter. Whether a party is a "prevailing party" shall be determined in accordance with Michigan law.

5. <u>Miscellaneous</u>.

a. The Parties each represent and warrant to each other, that they possess full authority to execute this Agreement in the capacity and manner shown below.

b. This Agreement is the final and complete agreement of the Parties with regard to the Lawsuit. The Parties acknowledge and agree that no representations, promises, or agreements have been made to or relied upon by any of them or by any person acting for or on their behalf in connection with the subject matter of this Agreement which are not specifically set forth in this Agreement. All representations, promises, understandings and agreements made by any of the Parties to another, whether in writing or orally, are understood by the Parties to be superseded and merged in this Agreement, which Agreement may not be orally modified.

2

c.      The Parties hereto acknowledge that negotiations leading up to this Agreement were entered into and that a settlement was achieved to compromise and settle disputed claims.      Neither the process of negotiating the settlement nor the act of executing this Agreement was intended to be (nor shall at any time be deemed to be) construed, or treated in any respect, as an admission of liability or the insufficiency of the legal validity of any claim or defense asserted (or which could have been asserted) by any of the Parties.

d.      Any dispute arising under this Agreement relative to the enforcement or interpretation of any term of disagreement shall be determined in accordance with the laws of the State of Michigan.      The Parties irrevocably stipulate to personal jurisdiction in the state courts of Michigan and to the convenience of the courts for Ingham County for resolution of disputes related to or pertaining to this Agreement or any facts related to it.

e.      All Parties acknowledge that each of the Parties and, if applicable, their counsel, have participated in the drafting and preparation of this Agreement, and therefore, no part hereof shall be construed against any of the Parties based upon the identity of the person who is purported to be the drafter of the language utilized in this Agreement.

f.      This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their privies, successors or assigns, whether past or present.

g.      The Parties shall take all further actions and execute and deliver any further documents and instruments as may be reasonably requested by the Parties to effectuate the provisions of this Agreement.

h.      The Parties represent that they have carefully read this Agreement and have consulted with their respective attorneys.      The Parties each affirmatively state that they understand the contents of this Agreement and sign this Agreement as their free act and deed.

i.      This Agreement may be executed in counterparts and shall be deemed effective when executed on the date set forth opposite each of the Parties or their counsel's respective signature.      Photocopies and/or facsimile copies of the signature pages to this Agreement shall have the same force and effect as original signatures.

*[Signatures on following page]*

3

AYERS BASEMENT SYSTEMS, LLC

Dated: November __, 2013

_____

By:_____

Its:_____

STAY DRY BASEMENT
WATERPROOFING, INC.

Dated: November __, 2013

_____

By:_____

Its:_____

Dated: November 22, 2013

_____
JAMES WHITUM

Dated: November __, 2013

_____
SHANE CUNNINGHAM

4

AYERS BASEMENT SYSTEMS, LLC

Dated: November ___, 2013

By:_____

Its:_____

STAY DRY BASEMENT
WATERPROOFING, INC.

Dated: November 2[ ], 2013

By:_____

Its:_____

Dated: November ___, 2013

JAMES WHITTUM

Dated: November ___, 2013

SHANE CUNNINGHAM

4

AYERS BASEMENT SYSTEMS, LLC

Dated: November __, 2013

By:_____

Its:_____

STAY DRY BASEMENT
WATERPROOFING, INC.

Dated: November __, 2013

By:_____

Its:_____

Dated: November __, 2013

_____
JAMES WHITTUM

Dated: December 2, 2013

_____
SHANE CUNNINGHAM

4

AYERS BASEMENT SYSTEMS, LLC

Dated: November __, 2013

By: _Virgil Ayens_

Its: _Member_

STAY DRY BASEMENT
WATERPROOFING, INC.

Dated: November __, 2013                    _____

By: _____

Its: _____

Dated: November __, 2013                    _____
JAMES WHITTUM

Dated: November __, 2013                    _____
SHANE CUNNINGHAM

4

# Tab B

**Virgil Ayers'**
**Ayers Basement** ®
**Since 1981**
Basement & Crawl Space Specialists™
2505 S Waverly Hwy
Lansing, MI 48911
517-645-2013

## CONFIDENTIALITY, NON-SOLICITATION, AND NON-COMPETE AGREEMENT

THIS AGREEMENT ("Agreement"), executed as of the last date written below (the "Effective Date"), by and between Ayers Basement Systems, a Michigan limited liability company, with an address of 2505 S Waverly Highway, Lansing, MI 48911 ("Ayers"), and _Talal William Badra_ ("Employee") (collectively with Ayers the "Parties").

Ayers is engaged in the business of basement, crawlspace and foundation waterproofing and repair; servicing of basement waterproofing systems; mold control and sump pumps ("Business"); and

Ayers will employ Employee on an at-will basis for the purpose of performing Business activities, whereby Employee is to be trained in or develop: certain trade secrets, technological know-how and other intellectual property for Ayers, and will be granted access to other certain confidential business information of Ayers; and

Ayers is willing to employ Employee, provide specialized training relating to Ayers' Business, and divulge confidential business information only on the conditions that: (i) Ayers' confidential business information remains completely confidential in nature, and (ii) Employee agrees to not compete with Ayers in accordance with the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto, and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. DEFINITIONS.   For purposes of this Agreement, the following terms are specifically defined as follows:

    a. "Existing Client" means any individual, business, or any other entity for which Ayers has performed or has been retained to perform Business services during the term of this Agreement, or for six (6) months prior to the Effective Date.

    b. "Prospective Client" means any individual, business, or any other entity that Ayers has identified as a potential client for Business services, prior to or during the term of this Agreement, the identity of which Employee has learned.

1

c. "Confidential Information" means Ayers' (1) business policies, finances, and business plans; (2) financial projections; (3) sales information; (4) software or marketing tools; (5) list(s) of vendors, Existing Clients or Prospective Clients; (6) account terms and pricing upon which products and services are obtained from vendors or sold to Existing or Prospective Clients; (7) employee names and other business contacts; and (8) techniques, methods, and strategies by which it develops, manufactures, markets, distributes, and/or sells any of the products or services of its Business.

2. NON-COMPETITION COVENANT.

a. <u>Duty to Not Compete</u>. Employee agrees not to establish, engage in, or in any manner become interested in, directly or indirectly, as an individual, employee, owner, partner, officer, director, agent, shareholder, investor, consultant, or otherwise, any business, trade, or operation engaged in any business activity that is similar to or competitive with the Business of Ayers, within the Michigan Counties of Allegan, Antrim, Barry, Benzie, Branch, Calhoun, Charlevoix, Clare, Clinton, Eaton, Grand Traverse, Gratiot, Hillsdale, Ingham, Ionia, Isabella, Jackson, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Manistee, Mason, Mecosta, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Osceola, Otsego, Ottawa, St. Joseph, Van Buren and Wexford, and any other county in which Ayers has performed Business activities, for a period of three (3) year from the date of termination of Employee's employment with Ayers ("Non-Competition Covenant").

b. <u>Impact on Other Covenants</u>. The terms of this Non-Competition Covenant shall have no impact on Employee's duties provided in any other section of this Agreement. Further, if upon expiration of this Non-Competition Covenant, either by time or court order, Employee engages in a business activity, directly or indirectly, in competition with the Business of Ayers, Employee is still prohibited from utilizing any Confidential Information while engaging in such business activity.

c. <u>Notice to Subsequent Parties</u>. Employee will inform any individual, business, or other entity engaged in any business activity that is similar to or competitive with the Business of Ayers that Employee seeks to become interested in, directly or indirectly, as an employee, owner, partner, officer, director, agent, shareholder, investor, consultant, or otherwise, of this Agreement at the earliest possible opportunity.

3. NON-SOLICITATION COVENANT.

a. <u>Duty to Not Solicit</u>. Employee agrees not to solicit, contact, or otherwise communicate with any Existing Client, Prospective Client, vendor, or employee of Ayers for the purpose of encouraging or inducing that person to conduct business with any individual or entity in competition with Ayers, on either his own behalf or on the behalf of others, for a period of three (3) years after termination of Employee's employment with Ayers.

4.  CONFIDENTIALITY COVENANT.

   a.  Duty of Confidentiality.  Employee agrees to retain in confidence and to not disclose to any individual, business, or other entity, directly or indirectly or by any means, all Confidential Information transmitted or disclosed to Employee by Ayers, Ayers' employees, agents, representatives, or other affiliated entities or individuals.  Employee further agrees to not use Confidential Information for Employee's own benefit, and to not disclose Confidential Information to any third-party, unless otherwise provided by law.  This duty of confidentiality shall survive the termination of Employee's employment and termination of this Agreement.

   b.  Other Information.  If Employee inadvertently receives information related to Ayers or any affiliated companies that is not related to this Agreement but that a reasonable person would discern to be confidential to Ayers, Employee will hold the information confidential, notwithstanding anything to the contrary in this Agreement.

   c.  Notice.  If Employee is required by law to disclose any Confidential Information, Employee shall provide written notice of the intended disclosure to Ayers within a sufficient time period to afford Ayers an opportunity to contest the making of any disclosure.  In no event shall notice to Ayers be given less than seven (7) days before the making of any disclosure of Confidential Information by Employee.

   d.  Return of Confidential Information.  Employee agrees to return any Confidential Information in Employee's control or possession (without retaining any copies) to Ayers upon termination of Employee's employment, or upon the request of Ayers for any reason whatsoever.  If Confidential Information is kept in a form and manner that does not permit its return to Ayers, then Employee agrees to take any necessary steps to secure that Confidential Information so that it cannot be accessed by any unauthorized individual or entity.

   e.  Information Open to Public.  The restrictions set forth in this Confidentiality Covenant shall not apply to Confidential Information that is shown by clear and convincing evidence was: (i) part of the public domain through no violation of this Agreement at the time of disclosure by Consultant; or (ii) already known or available to Consultant prior to the Disclosure Period.

5.  BREACH BY EMPLOYEE.

   a.  Injunctive Relief.  The Parties agree that because Ayers does not have an adequate remedy at law to protect its interests under this Agreement, Ayers is entitled to injunctive relief, in addition to any other remedies or relief that would be available in the event of breach of the provisions of this Agreement.

3

b. <u>Liquidated Damages</u>.  The Parties agree that monetary damages resulting from a breach of this Agreement by Employee are difficult, if not impossible, to calculate with any certainty.  As a result, the parties agree that the amount of $75,000.00 represents a fair and reasonable estimation of monetary damages Ayers will suffer as a result of Employee's breach of this Agreement, and Employee agrees to pay Ayers that amount as liquidated damages, and not as a penalty, for Employee's breach of this Agreement.  This liquidated damage provision is a good-faith attempt by the Parties to estimate the total damages incurred by Ayers as a result of Employee's breach of this Agreement.

c. <u>Fees, Costs, and Expenses</u>.  In the event of any breach of this Agreement by Employee, Ayers shall be entitled to receive from Employee payment of, or reimbursement for, its reasonable attorney's fees, costs, and expenses incurred in enforcing this Agreement, in addition to any other remedies available at law or in equity.

6. MISCELLANEOUS

a. <u>Reasonableness</u>.  The Parties agree that the provisions of this Agreement are reasonable and that Ayers would not employ Employee without the restrictive covenants contained in this Agreement.

b. <u>Ownership of Intellectual Property</u>.  Employee will not at any time during the term of this Agreement, furnish any ideas, inventions, improvements, or Confidential Information related to the Business of Ayers, to any entities other than Ayers.   Employee also agrees that all ideas, inventions, improvements and Confidential Information developed during the term of the Agreement shall be the property of Ayers.  Upon termination of the Agreement, whether by Employee or Ayers, all ideas, inventions, improvements and Confidential Information are and shall be the sole property of Ayers, free from any legal or equitable title of Employee.  Upon the request of Ayers, all necessary documents for perfecting title shall be executed by Employee and delivered to Ayers.

c. <u>Non-Disparagement</u>.  The Parties agree that they will not speak of or otherwise characterize one another in a negative light with regard to Employee's relationship with Ayers, the Business of Ayers, or the terms of this Agreement, except that Ayers may provide information related to the Employee's employment with Ayers to any individual or entity that Employee is seeking employment with upon that prospective employer's request.

d. <u>Governing Law and Venue</u>. The terms of this Agreement shall be construed in accordance with the laws of the State of Michigan.  Any lawsuit related to this Agreement shall be brought in the Courts of Eaton County, Michigan.

e. Successor Liability and Assignment. This Agreement shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Parties. This Agreement shall not be assignable by Employee without the written consent of Ayers. Ayers, however, may assign its interest in this Agreement without the consent of Employee.

f. Invalidity and Reformation. If any part of this Agreement is deemed unreasonable by a court of competent jurisdiction, that determination does not invalidate this Agreement or any other provision of this Agreement; rather, the court shall reduce the offending portion to the maximum restriction it deems reasonable under the circumstances ("Revised Portion"), and the Employee shall be bound thereby and liable for any damages incurred by Ayers on or after the Effective Date as if the Revised Portion was incorporated into this Agreement at the time of execution.

g. Waiver of Jury Trial. The Parties irrevocably waive, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement.

h. Captions. Captions to paragraphs and sections of this Agreement have been included solely for the sake of convenient reference and are entirely without substantive effect.

i. Counterparts. This Agreement may be executed in counterparts by the Parties and shall be the binding agreement of all of them upon execution by each of them of one or more copies hereof.

j. Entire Agreement. This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions of the Parties, whether oral or written, relating to the subject matter of this Agreement. The Parties represent that there are no other agreements between them in connection with the subject matter of this Agreement.

k. Waivers and Amendment. No amendment, supplement, modification, waiver or termination of this Agreement shall be implied or be binding (including, without limitation, any alleged waiver based on a party's actual knowledge of any inaccuracy in any representation or warranty contained herein) unless in writing and signed by the party against whom such amendment, supplement, modification, waiver or termination is asserted. No forbearance to exercise any right or privilege under this Agreement shall be construed as a waiver of the protections, rights, or privileges afforded by this Agreement (whether or not similar), nor shall any single waiver of any provision of this Agreement constitute a continuing waiver, unless otherwise expressly provided in writing.

5

The undersigned have executed this Agreement on the date and year set opposite their signatures.

Date: 9/22/14

Employee

AYERS BASEMENT SYSTEMS, LLC

Date: 9/22/2014

By: _____

Its: Manager

6

# Tab
# C

*Virgil Ayers'*
**Ayers Basement** ®
Since 1981
**Basement & Crawl Space Specialists**
2505 S Waverly Hwy
Lansing, MI 48911
517-645-2013

## CONFIDENTIALITY, NON-SOLICITATION, AND NON-COMPETE AGREEMENT

THIS AGREEMENT ("Agreement"), executed as of the last date written below (the "Effective Date"), by and between Ayers Basement Systems, a Michigan limited liability company with an address of 2505 S Waverly Highway, Lansing, MI 48911 ("Ayers"), and David Kuzava ("Employee") (collectively with Ayers the "Parties").

Ayers is engaged in the business of basement, crawlspace and foundation waterproofing and repair; servicing of basement waterproofing systems; mold control and sump pumps ("Business"); and

Ayers will employ Employee on an at-will basis for the purpose of performing Business activities, whereby Employee is to be trained in or develop: certain trade secrets, technological know-how and other intellectual property for Ayers, and will be granted access to other certain confidential business information of Ayers; and

Ayers is willing to employ Employee, provide specialized training relating to Ayers' Business, and divulge confidential business information only on the conditions that: (i) Ayers' confidential business information remains completely confidential in nature, and (ii) Employee agrees to not compete with Ayers in accordance with the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto, and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.  DEFINITIONS.   For purposes of this Agreement, the following terms are specifically defined as follows:

    a.  "Existing Client" means any individual, business, or any other entity for which Ayers has performed or has been retained to perform Business services during the term of this Agreement, or for six (6) months prior to the Effective Date.

    b.  "Prospective Client" means any individual, business, or any other entity that Ayers has identified as a potential client for Business services, prior to or during the term of this Agreement, the identity of which Employee has learned.

1

c. "Confidentia. information" means Ayers' (1) business policies, finances, and business plans; (2) financial projections; (3) sales information; (4) software or marketing tools; (5) list(s) of vendors, Existing Clients or Prospective Clients; (6) account terms and pricing upon which products and services are obtained from vendors or sold to Existing or Prospective Clients; (7) employee names and other business contacts; and (8) techniques, methods, and strategies by which it develops, manufactures, markets, distributes, and/or sells any of the products or services of its Business.

2. NON-COMPETITION COVENANT.

a. <u>Duty to Not Compete</u>. Employee agrees not to establish, engage in, or in any manner become interested in, directly or indirectly, as an individual, employee, owner, partner, officer, director, agent, shareholder, investor, consultant, or otherwise, any business, trade, or operation engaged in any business activity that is similar to or competitive with the Business of Ayers, within the Michigan Counties of Allegan, Antrim, Barry, Benzie, Branch, Calhoun, Charlevoix, Clare, Clinton, Eaton, Grand Traverse, Gratiot, Hillsdale, Ingham, Ionia, Isabella, Jackson, Kalamazoo, Kalkaska, Kent, Lake, Leelanau, Manistee, Mason, Mecosta, Missaukee, Montcalm, Muskegon, Newaygo, Oceana, Osceola, Otsego, Ottawa, St. Joseph, Van Buren and Wexford, and any other county in which Ayers has performed Business activities, including within the States of Indiana, Ohio, Wisconsin and Minnesota for a period of three (3) year from the date of termination of Employee's employment with Ayers ("Non-Competition Covenant").

b. <u>Impact on Other Covenants</u>. The terms of this Non-Competition Covenant shall have no impact on Employee's duties provided in any other section of this Agreement. Further, if upon expiration of this Non-Competition Covenant, either by time or court order, Employee engages in a business activity, directly or indirectly, in competition with the Business of Ayers, Employee is still prohibited from utilizing any Confidential Information while engaging in such business activity.

c. <u>Notice to Subsequent Parties</u>. Employee will inform any individual, business, or other entity engaged in any business activity that is similar to or competitive with the Business of Ayers that Employee seeks to become interested in, directly or indirectly, as an employee, owner, partner, officer, director, agent, shareholder, investor, consultant, or otherwise, of this Agreement at the earliest possible opportunity.

3. NON-SOLICITATION COVENANT.

a. <u>Duty to Not Solicit</u>. Employee agrees not to solicit, contact, or otherwise communicate with any Existing Client, Prospective Client, vendor, or employee of Ayers for the purpose of encouraging or inducing that person to conduct business with any individual or entity in competition with Ayers, on either his own behalf or on the behalf of others, for a period of three (3) years after termination of Employee's employment with Ayers.

2

4. CONFIDENTIALITY COVENANT.

    a. Duty of Confidentiality. Employee agrees to retain in confidence and to not disclose to any individual, business, or other entity, directly or indirectly or by any means, all Confidential Information transmitted or disclosed to Employee by Ayers, Ayers' employees, agents, representatives, or other affiliated entities or individuals. Employee further agrees to not use Confidential Information for Employee's own benefit, and to not disclose Confidential Information to any third-party, unless otherwise provided by law. This duty of confidentiality shall survive the termination of Employee's employment and termination of this Agreement.

    b. Other Information. If Employee inadvertently receives information related to Ayers or any affiliated companies that is not related to this Agreement but that a reasonable person would discern to be confidential to Ayers, Employee will hold the information confidential, notwithstanding anything to the contrary in this Agreement.

    c. Notice. If Employee is required by law to disclose any Confidential Information, Employee shall provide written notice of the intended disclosure to Ayers within a sufficient time period to afford Ayers an opportunity to contest the making of any disclosure. In no event shall notice to Ayers be given less than seven (7) days before the making of any disclosure of Confidential Information by Employee.

    d. Return of Confidential Information. Employee agrees to return any Confidential Information in Employee's control or possession (without retaining any copies) to Ayers upon termination of Employee's employment, or upon the request of Ayers for any reason whatsoever. If Confidential Information is kept in a form and manner that does not permit its return to Ayers, then Employee agrees to take any necessary steps to secure that Confidential Information so that it cannot be accessed by any unauthorized individual or entity.

    e. Information Open to Public. The restrictions set forth in this Confidentiality Covenant shall not apply to Confidential Information that is shown by clear and convincing evidence was: (i) part of the public domain through no violation of this Agreement at the time of disclosure by Consultant; or (ii) already known or available to Consultant prior to the Disclosure Period.

5. BREACH BY EMPLOYEE.

    a. Injunctive Relief. The Parties agree that because Ayers does not have an adequate remedy at law to protect its interests under this Agreement, Ayers is entitled to injunctive relief, in addition to any other remedies or relief that would be available in the event of breach of the provisions of this Agreement.

3



b. Liquidated _ _amages.  The Parties agree that monetary damages resulting from a breach of this Agreement by Employee are difficult, if not impossible, to calculate with any certainty.  As a result, the parties agree that the amount of $75,000.00 represents a fair and reasonable estimation of monetary damages Ayers will suffer as a result of Employee's breach of this Agreement, and Employee agrees to pay Ayers that amount as liquidated damages, and not as a penalty, for Employee's breach of this Agreement.  This liquidated damage provision is a good-faith attempt by the Parties to estimate the total damages incurred by Ayers as a result of Employee's breach of this Agreement.

c. Fees, Costs, and Expenses.  In the event of any breach of this Agreement by Employee, Ayers shall be entitled to receive from Employee payment of, or reimbursement for, its reasonable attorney's fees, costs, and expenses incurred in enforcing this Agreement, in addition to any other remedies available at law or in equity.

6. MISCELLANEOUS

a. Reasonableness.  The Parties agree that the provisions of this Agreement are reasonable and that Ayers would not employ Employee without the restrictive covenants contained in this Agreement.

b. Ownership of Intellectual Property.  Employee will not at any time during the term of this Agreement, furnish any ideas, inventions, improvements, or Confidential Information related to the Business of Ayers, to any entities other than Ayers.  Employee also agrees that all ideas, inventions, improvements and Confidential Information developed during the term of the Agreement shall be the property of Ayers.  Upon termination of the Agreement, whether by Employee or Ayers, all ideas, inventions, improvements and Confidential Information are and shall be the sole property of Ayers, free from any legal or equitable title of Employee.  Upon the request of Ayers, all necessary documents for perfecting title shall be executed by Employee and delivered to Ayers.

c. Non-Disparagement.  The Parties agree that they will not speak of or otherwise characterize one another in a negative light with regard to Employee's relationship with Ayers, the Business of Ayers, or the terms of this Agreement, except that Ayers may provide information related to the Employee's employment with Ayers to any individual or entity that Employee is seeking employment with upon that prospective employer's request.

d. Governing Law and Venue.  The terms of this Agreement shall be construed in accordance with the laws of the State of Michigan.  Any lawsuit related to this Agreement shall be brought in the Courts of Eaton County, Michigan.

4



e. <u>Successor Liability and Assignment</u>. This Agreement shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Parties. This Agreement shall not be assignable by Employee without the written consent of Ayers. Ayers, however, may assign its interest in this Agreement without the consent of Employee.

f. <u>Invalidity and Reformation</u>. If any part of this Agreement is deemed unreasonable by a court of competent jurisdiction, that determination does not invalidate this Agreement or any other provision of this Agreement; rather, the court shall reduce the offending portion to the maximum restriction it deems reasonable under the circumstances ("Revised Portion"), and the Employee shall be bound thereby and liable for any damages incurred by Ayers on or after the Effective Date as if the Revised Portion was incorporated into this Agreement at the time of execution.

g. <u>Waiver of Jury Trial</u>. The Parties irrevocably waive, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement.

h. <u>Captions</u>. Captions to paragraphs and sections of this Agreement have been included solely for the sake of convenient reference and are entirely without substantive effect.

i. <u>Counterparts</u>. This Agreement may be executed in counterparts by the Parties and shall be the binding agreement of all of them upon execution by each of them of one or more copies hereof.

j. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions of the Parties, whether oral or written, relating to the subject matter of this Agreement. The Parties represent that there are no other agreements between them in connection with the subject matter of this Agreement.

k. <u>Waivers and Amendment</u>. No amendment, supplement, modification, waiver or termination of this Agreement shall be implied or be binding (including, without limitation, any alleged waiver based on a party's actual knowledge of any inaccuracy in any representation or warranty contained herein) unless in writing and signed by the party against whom such amendment, supplement, modification, waiver or termination is asserted. No forbearance to exercise any right or privilege under this Agreement shall be construed as a waiver of the protections, rights, or privileges afforded by this Agreement (whether or not similar), nor shall any single waiver of any provision of this Agreement constitute a continuing waiver, unless otherwise expressly provided in writing.

5



The undersigned have executed this Agreement on the date and year set opposite their signatures.

Date: 2-17-2016

Employee

AYERS BASEMENT SYSTEMS, LLC

Date: 2/17/2016

By: _____
Its: Manager

6